UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-cv-21284-KING

MARIANGELA ROMERO, an Individual,

    Plaintiff,

v.

WEISS ROHLIG USA, a Foreign Limited
Liability Corporation,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment **(DE 43)**. The Motion is fully briefed. As a threshold matter, Plaintiff has conceded Defendant's motion for summary judgment as to Plaintiff's Count III (Family Medical Leave Act), Count IV (Intentional Infliction of Emotional Distress), and Plaintiff's hostile work environment claims. Remaining for consideration are Plaintiff's Count I (Discrimination and Retaliation in Violation of the Pregnancy Discrimination Act) and Count II (Discrimination and Retaliation Based on Sex and Gender in Violation of Title VII of the Civil Rights Act).

### I. Background

The undisputed facts are as follows. On June 12, 2012, Plaintiff Romero saw her co-worker Jairo Cabanilla[1] make a gesture described as holding his hand out in front of his stomach. Romero believes that Cabanilla was mocking her physique. She was pregnant at the time. Later that day, Romero's co-worker, Sarisbel Lozano, confirmed that Cabanilla was

---

[1] Plaintiff characterizes Cabanilla as her supervisor. The distinction is immaterial.

referring to Romero. Romero e-mailed Tracy Minnec, the head of Human Resources ("HR"), to complain of the incident and of other slights that Romero thought she had suffered. The next day, on June 13, 2012, Romero posted "I hate my job!!!" on Facebook.

On June 14, 2012, Minnec and Miami branch manager William Troy investigated the hand-gesture incident. They interviewed most but not all employees who Romero identified as having witnessed the hand-gesture. None of the employees, including Lozano, said they saw the hand gesture. That same day, Romero received an e-mail from HR Specialist Julia Haynes. Haynes wrote, "I've been going through everyone's vacation accruals so that they are accurate and up to date." DE 66-3, at 26. Haynes claimed to find a discrepancy between Romero's deserved paid-time-off ("PTO") hours and what was reflected in "HR Online." She told Romero that her PTO hours are 38, rather than 82. *Id.* In deposition, Minnec could not recall why Romero's PTO hours were reviewed or whether HR in fact reviewed those of other employees. DE 67, at 8 ¶ 50. Haynes could not remember either.

On June 18, 2012, Minnec and Troy explained to Romero that they had not found any information to support her allegations against Cabanilla. After learning that Lozano denied seeing the hand gesture to Minnec and Troy, Romero asked Minnec to interview Lozano again. Minnec did, and Lozano changed her story, acknowledging that she saw the hand gesture, but saying that she did not know if it was made in reference to Romero.

In a June 20, 2012, memorandum, Minnec explained to Romero that there was no evidence to support her claims against Cabanilla, and that the matter was considered closed. On July 5, 2012, Romero was terminated. The reason, she was told, was her Facebook post. This was twenty-three days after she complained to human resources.

## II. Governing Legal Standards

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it is may determine the outcome under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must show specific facts to support that there is a genuine dispute. *Id.* at 256. On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *Id.* at 255. The Court may not undertake the jury's function of weighing the evidence or undertaking credibility determinations. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010).

Under the Civil Rights Act, employers may not discharge or otherwise discriminate against an individual on the basis of sex—which includes on the basis of pregnancy. 42 U.S.C. §§ 2000e(k), 2000e-2(a). Pregnancy discrimination claims are analyzed under the same framework as sex discrimination claims. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). Where, as here, a plaintiff cannot point to direct evidence of discrimination, she may show discriminatory intent by circumstantial evidence:

> One way is through the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Another way is "present[ing] circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed–Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir.2011).

*Id.* (alteration in original). The Civil Rights Act also contains an anti-retaliation provision, which forbids employers from discriminating against an employee "because he has opposed

3

any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The burden-shifting framework applies to Romero's retaliation claim. *See Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).

### III.   Plaintiff's Claim for Retaliation

#### A. Plaintiff Establishes a Prima Facie Case

"To establish a *prima facie* case of retaliation, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Id.* The parties dispute only causation. "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. . . . But mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Romero complained to Minnec on June 12, 2012. In two days her PTO hours were reduced and in twenty-three days she was fired. Defendant characterizes Romero's Facebook post as an "intervening event" that "eliminates any possibility of a causal relationship." DE 43, at 8. *See Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011) ("Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action."). However, Romero posted "I hate my job!!!" on Facebook only one day after her complaint to Minnec, making the post only one day closer

4

in time than her earliest protected action.[2] Under these circumstances, the court concludes that Romero has shown causation for both the reduction in her PTO hours and her termination. She has established a prima facie case of retaliation.

### B. Defendant Proffers Legitimate, Non-Retaliatory Reasons

It is undisputed that Defendant has proffered legitimate, non-retaliatory reasons for terminating Romero. According to a declaration by Thomas Gilgen, who was Defendant's President and CEO, "[t]he decision to terminate Ms. Romero was based solely on that she wrote on her Facebook that she 'hated' working at Weiss-Rohlig. The Company decided that Weiss-Rohlig should not continue [to] employ someone who hated working at the Company." DE 44-4 ¶ 5. "The Company was concerned that her 'hatred' of Weiss-Rohlig would impact the quality of her work, and her interactions with Weiss-Rohlig's customers which could negatively impact the Company." *Id.* at ¶ 6.

Other individuals involved in Romero's termination expressed reasons for her termination. It is undisputed that Romero was Facebook friends with other Weiss-Rohlig employees, including Amanda Krueger. DE 45, at 7 ¶ 28. Krueger showed the Facebook post to Mark McCullough, who was Defendant's Vice President of Operations. McCullough showed it to Minnec. *Id.* McCullough testified that he was the one who "raised a concern that led to her [Romero's] termination." DE 44-3, at 4. "My concern was that she was broadcasting via Facebook that she hated her job." *Id.* Minnec declared that she "found it extremely troubling for an employee in a customer service role to have posted, 'I hate my job!!!' in a forum where it could be seen by those outside the company." DE 44-5, at 6 ¶ 25.

---

[2] The Court notes without deciding that other, later actions by Romero, such as asking Minnec to interview Lozano a second time, may constitute statutorily protected actions.

As for the reduction in Romero's PTO hours, Defendant relies on Haynes's contemporaneous statement, in her e-mail, that Haynes was merely "going through everyone's vacation accruals so that they are accurate and up to date." DE 66-3, at 26.

### C. Plaintiff Fails to Show Pretext

Because Defendant has proffered legitimate, non-retaliatory reasons for Romero's termination, the burden of production shifts back to Romero to show that Defendant's proffered reasons were pretext for unlawful retaliation. The Court "'must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 892 (11th Cir. 2011) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997)).

Romero seeks to show pretext, first, by pointing to her spotless disciplinary history and exemplary work history, which are undisputed. Romero asserts that this shows "the implausibility of a genuine concern over the quality of Plaintiff's work" (DE 68, at 4), as Gilgen expressed in his declaration. Second, Romero shows that Minnec and Troy did not ask Romero why she posted "I hate my job!!!" on Facebook until her termination meeting with them. The implication is that they had to have known—or would have known if they asked—that her Facebook post was precipitated by her frustration with the hand-gesture incident, rather than hatred of her job. Romero also points to Troy's testimony about the termination meeting. Troy testified that he and Minnec planned to ask Romero whether she liked her job even though the decision to fire her had already been made. Troy testified that

he didn't think it mattered how Romero answered the question, and that he thought the purpose of the question was "to get her to answer that she didn't like her job."

The Court concludes that Romero's exemplary work history, Troy's statements, and the fact that the termination decision was made before the meeting wherein Troy and Minnec asked Romero whether she liked her job, all tend to undermine the notion that Romero's supervisors were genuinely concerned that Romero hated her job, or that the quality of her work might suffer. However, Romero has come forward with no evidence to undermine Defendant's proffered concern that Romero's post—"I hate my job!!!"—was made on a public forum for individuals within and without Weiss-Rohlig to see. The business interests potentially harmed by such behavior—however sympathetic one might be to the frustrations that may have precipitated it—render legitimate the punishment of termination as a consequence. In this regard, Romero has shown no implausibilities, inconsistencies, incoherencies, or contradictions.

As for the reduction in Romero's PTO hours, Romero points only to Minnec's and Haynes's inability to remember, during their depositions, why Romero's PTO hours were reviewed or whether HR in fact reviewed those of other employees. These individuals' mere inability to remember does not create a triable issue, where Romero has shown no evidence that retaliation motivated the reduction in PTO hours. In all, Romero has failed to show pretext, or to create a triable issue as to Defendant's retaliatory intent.[3]

### IV. Plaintiff's Claim for Discrimination

---

[3] Romero's assertions as to the alleged inadequacy of Defendant's investigation of Romero's complaint, and the authority cited in connection therewith (DE 68, at 13), are germane to a hostile work environment claim, which Romero has abandoned. The Court concludes that the circumstances of Defendant's investigation do not show pretext or retaliatory intent.

7

Other than the hand-gesture incident, Romero "is unaware of anything else Mr. Cabanilla ever said or did that was negative regarding pregnancy." DE 45, at 7 ¶ 26. *See* DE 67, at 3 ¶ 26. Furthermore, Romero has simply failed to produce a scintilla of evidence that (1) Cabanilla was involved in the decisions to terminate her or to reduce her PTO hours; or that (2) there is any causal connection between her pregnancy and her termination or reduction in PTO hours. She has failed to make a prima facie case of discrimination, or to create a triable issue concerning Defendant's discriminatory intent.

### V.     Conclusion

Therefore, it is **ORDERED, ADJUDGED, and DECREED** that Defendant's Motion for Summary Judgment **(DE 43)** be, and the same is, hereby **GRANTED**.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 13th day of May, 2015.

```
                              /s/ James Lawrence King
                              JAMES LAWRENCE KING
                              UNITED STATES DISTRICT JUDGE
                              SOUTHERN DISTRICT OF FLORIDA
```

cc:     All Counsel of Record